UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION, | ) |
| Plaintiff, | ) |
| v. | ) Case No. |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CUSTOMS AND BORDER PROTECTION; and UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, | ) |
| Defendants. | ) |

**COMPLAINT**

INTRODUCTION

1. The American Civil Liberties Union ("ACLU") brings this action under the Freedom of Information Act ("FOIA") to force the U.S. Department of Homeland Security ("DHS"), U.S. Customs and Border Protection ("CBP"), and U.S. Immigration and Customs Enforcement ("ICE") (collectively, "Defendants" or "Defendant Agencies") to release records about their purchases of cell phone location data for immigration enforcement and other purposes. Multiple news sources have confirmed these agencies' purchase of access to databases containing precise location information for millions of people—information gathered by applications ("apps") running on their smartphones. The agencies' purchases raise serious concerns that they are evading Fourth Amendment protections for cell phone location information by paying for access instead of obtaining a warrant. Yet, more than nine months after the ACLU submitted its FOIA request ("the Request"), these agencies have produced no responsive records. The information

sought is of immense public significance, not only to shine a light on the government's use of powerful location-tracking data in the immigration context, but also to assess whether the government's purchase of this sensitive data complies with constitutional and legal limitations and is subject to appropriate oversight and control.

2. In *Carpenter v. United States*, 138 S. Ct. 2206, 2217 (2018), the Supreme Court held that people have a reasonable expectation of privacy in the "all-encompassing record of the[ir] whereabouts" created when their cell phones interact with cellular service providers' towers. The Court specified that "[a]lthough such records are generated for commercial purposes, that distinction does not negate [an individual's] anticipation of privacy in his physical location." *Id.* As a result, the Court held that "the Government must generally obtain a warrant supported by probable cause before acquiring such records." *Id.* at 2221. The cell phone location information at issue in this suit—GPS coordinates captured by apps running on people's phones, often without their knowledge, sold by the app providers to data aggregators, and then sold to law enforcement agencies—are no less revealing of individuals' "privacies of life." *Id.* at 2217. But while it has been widely reported that Defendant Agencies are acquiring this highly sensitive data without warrants, little is known about how they are using it, what controls are in place over such use, and how they square their practices with the *Carpenter* decision and other provisions of federal law.

3. The requested information is critical to informing the ongoing public debate about transparency and oversight of law enforcement as well as protection of vulnerable groups, such as immigrants and undocumented persons, from government abuses. In particular, there is deep public concern surrounding ICE and CBP operations targeting people for arrest, detention and deportation, including whether there are appropriate limits on agents' discretion, whether

particularly vulnerable populations are being protected from unjustified targeting, and whether agents are using acceptable means to locate and detain people. Disclosure of the records that Plaintiff seeks through this action would contribute significantly to the public's understanding of how the Defendants use invasive surveillance technology both at the border and within American communities, and whether they are complying with constitutional and legal limitations on unreasonable searches. For example, "CBP officials [have] confirmed to Senate staff that the agency is using Venntel's location database to search for information collected from phones in the United States without any kind of court order," but the "agency refused a follow-up request for information about the legal analysis it conducted."[1] Without access to the records Plaintiff seeks, the public and lawmakers will lack information to engage in a fully informed debate about proper limits on Defendants' practices.

4. Plaintiff now asks the Court to issue an injunction requiring the Defendants to conduct adequate searches for records and produce responsive records. Plaintiff also seeks an order enjoining the Defendants from assessing fees for the processing of the Request.

## JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

6. Venue lies in the Southern District of New York pursuant to 5 U.S.C. § 552(a)(4)(B), including because it is the district in which the Plaintiff has its principal place of business.

## PARTIES

7. The American Civil Liberties Union is a nationwide, non-profit, nonpartisan organization with its principal place of business in New York, New York. The ACLU's mission

---

[1] Letter from Sen. Ron Wyden, et al., to Hon. Joseph V. Cuffari, Inspector Gen., Dep't of Homeland Sec. (Oct. 23, 2020), https://www.wyden.senate.gov/imo/media/doc/102320%20Wyden%20Warren%20Brown%20Markey%20Schatz%20Letter%20RE%20CBP%20Phone%20Tracking.pdf.

is to maintain and advance civil rights and civil liberties and to ensure that the U.S. government acts in compliance with the Constitution and laws of the United States. Among the rights advanced by the ACLU that are implicated by the subject of the Request are the rights of people who are targeted, arrested, and detained by federal immigration authorities, the right to freedom of speech and association under the First Amendment, the right to be free of unreasonable government searches and seizures under the Fourth Amendment, and the right to due process under the Fifth and Fourteenth Amendments. The ACLU regularly publishes information and analysis concerning government activities derived from FOIA requests and other sources.

8. Defendant DHS is a federal agency within the meaning of 5 U.S.C. § 552(f)(1).

9. Defendant CBP is a component of DHS and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

10. Defendant ICE is a component of DHS and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

FACTS

Background: Defendants are Purchasing Access to Large Quantities of Cell Phone Location Data

11. On February 7, 2020, the *Wall Street Journal* reported that DHS has "bought access to a commercial database that maps the movements of millions of cellphones in America and is using it for immigration and border enforcement," without obtaining a warrant.[2] This was the first time the media had reported on the federal government's purchase of such data for law enforcement purposes. The report describes the commercial database, provided by Venntel Inc., as "one of the largest known troves of bulk data being deployed by law enforcement in the

---

[2] Byron Tau & Michelle Hackman, *Federal Agencies Use Cellphone Location Data for Immigration Enforcement*, Wall St. J. (Feb. 7, 2020), https://www.wsj.com/articles/federal-agencies-use-cellphone-location-data-for-immigration-enforcement-11581078600.

U.S."[3] Subsequent reporting revealed that another company, Babel Street, was selling a similar database to CBP and ICE.[4] Recently, *Buzzfeed News* reported on a DHS memorandum that purports to provide justification for Defendants' warrantless acquisition and use of this data.[5] Neither that memo, nor the other records concerning Defendants' practices, have been publicly released.

## The Records Requested

12. On February 10, 2020, Plaintiff submitted the Request to DHS, CBP, and ICE. A true and accurate copy of the Request is attached hereto as Exhibit A.

13. The Request sought seven categories of records, including:

a. All contracts, memoranda of understanding, letters of commitment, licenses, subscription agreements, and other agreements with vendors, including but not limited to Venntel Inc., concerning government access to or receipt of data from commercial databases containing cell phone location information.

b. All communications with Venntel Inc. and all communications discussing or mentioning Venntel Inc.

c. All policies, procedures, guidelines, formal or informal guidance, advisories, directives, training materials, presentations, and memoranda concerning: (1) Access to commercial databases containing cell phone location information; (2) Acquisition, processing, retention, use, or dissemination of cell phone location information purchased from a commercial vendor; (3) The anonymization and de-anonymization of cell phone location information purchased from a commercial vendor; (4) The use of cell phone location information purchased from a commercial vendor in civil immigration enforcement actions; (5) The use of evidence in any court application, trial, hearing, or other proceeding that consists of, was obtained from, or was derived from cell phone location information purchased from a commercial vendor; (6) The use

---

[3] *Id.*

[4] Charles Levinson, *Through Apps, Not Warrants, 'Locate X' Allows Federal Law Enforcement to Track Phones*, Protocol (Mar. 5, 2020), https://www.protocol.com/government-buying-location-data.

[5] Hamed Aleaziz & Caroline Haskins, *DHS Authorities Are Buying Moment-By-Moment Geolocation Cellphone Data To Track People,* BuzzFeed News. (Oct. 30, 2020), https://www.buzzfeednews.com/article/hamedaleaziz/ice-dhs-cell-phone-data-tracking-geolocation.

5

of "lead" or "tip" information that consists of, was obtained from, or was derived from cell phone location information purchased from a commercial vendor; and (7) The circumstances under which the government notifies defendants or respondents of the use of evidence that consists of, was obtained from, or was derived from cell phone location information purchased from a commercial vendor, including notice of the information's provenance.

d. All formal legal analysis concerning access to commercial databases containing cell phone location information, or the acquisition, processing, retention, use, or dissemination of cell phone location information purchased from a commercial vendor, including the application of *Carpenter v. United States*, 138 S. Ct. 2206 (2018), to this information.

e. Records sufficient to show the volume of cell phone location data contained in the commercial databases for which DHS, CBP, and ICE have purchased access, and records sufficient to show the volume of data that the agencies have accessed from these databases.

f. Records sufficient to show the number of times each year that DHS, CBP, and ICE employees or contractors have accessed commercial databases containing cell phone location information, or have used location data obtained from such databases.

g. All records concerning the use of evidence in any court application, trial, hearing, or other proceeding that consists of, was obtained from, or was derived from cell phone location information purchased from a commercial vendor, including records concerning whether defendants or respondents received notice of the government's reliance on such information and its provenance.

14. Plaintiff requested expedited processing of the request for records on the basis of a "compelling need" to "inform the public concerning actual or alleged Federal Government activity" pursuant to 5 U.S.C. § 552(a)(6)(E)(v)(II).

15. Plaintiff sought a waiver of search, review, and duplication fees on the ground that disclosure of the requested records is "in the public interest" and because it is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

16. Plaintiff also sought a limitation of fees on the ground that Plaintiff qualifies as a "representative of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II).

Defendants' Responses to the Request

*CBP*

17. On February 12, 2020, CBP sent Plaintiff a letter acknowledging receipt of the Request.

18. On March 6, 2020, CBP granted Plaintiff's request for a fee waiver.

19. On April 23, 2020, CBP denied Plaintiff's request for expedited processing.

20. On May 7, 2020, CBP sent Plaintiff an "interim response" letter stating that the agency was unable to respond to several categories of the Request. On May 8, 2020, CBP withdrew the May 7 letter and issued a "corrected interim response" letter that stated that "CBP is processing your request" and asserted that categories 5 and 6 of the request "fail to describe the records sought with sufficient particularity." Via a May 8, 2020, email, CBP also inquired whether it "may proactively remove withheld in full documents which are protected pursuant to 5 USC 552(b)(5), such as deliberative, attorney-client privileged, and attorney-work product privileged records."

21. On May 20, 2020, counsel for Plaintiff spoke by phone with Patrick Howard, Branch Chief of CBP's FOIA Division, to discuss the issues raised by CBP's May 8 communications. On May 21, 2020, counsel for Plaintiff emailed Mr. Howard to clarify and memorialize the matters discussed on the call. Specifically, Plaintiff:

   a. Stated that "we consent to the agency excluding draft documents withheld under the deliberative process privilege, but only if the agency is able to identify and

process a final version of the document. However, we do not consent to the exclusion of records that the agency seeks to withhold as subject to attorney-client or attorney-work-product privilege."

 b. Offered substitute language for Categories 5 and 6 of the Request, specifically:

  i. Category 5: Records reflecting the volume of cell phone location data contained in the commercial databases for which DHS, CBP, and ICE have purchased access, and records reflecting the volume of data that the agencies have accessed from these databases. Such records may include electronic communications, memoranda, marketing materials, responses to requests for proposals, contracts, memoranda of understanding, and similar documents. In responding to this category of the Request, the agency need not produce multiple records reflecting the same information.

  ii. Category 6: Records reflecting the number of times each year that DHS, CBP, and ICE employees or contractors have accessed commercial databases containing cell phone location information, or have used location data obtained from such databases. Such records may include reports, presentations, procurement requests, memoranda, electronic communications between agency employees, with other agencies, or with private companies, and similar documents. In responding to this category of the Request, the agency need not produce multiple records reflecting the same information.

 c. Clarified the nature of the cell phone location information at issue in the Request.

22. Between May 21 and June 3, 2020, counsel for Plaintiff and Mr. Howard corresponded to clarify CBP's obligations as to records withheld in full or in part under Exemption 5. On June 3, 2020, Mr. Howard stated via email that "I will be in touch if further questions come up."

23. Plaintiff has received no further communication and no responsive records from CBP since June 3, 2020. A true and accurate copy of Plaintiff's relevant correspondence with CBP is attached hereto as Exhibit B.

24. CBP possesses records responsive to the Request. Federal contracting records and press reports reveal that CBP has purchased access to cell phone location databases.

25. Plaintiff has exhausted administrative remedies with CBP.

## DHS

26. On March 4, 2020, DHS sent Plaintiff a letter acknowledging receipt of the request and stating that the "request is too broad in scope or did not specifically identify the records which you are seeking." The letter stated that "[t]his is not a denial of your request," and invited submission of "a perfected request."

27. On March 9, 2020, Plaintiff responded in detail via letter to DHS's concerns about the scope and form of the request and explained why the request was sufficiently detailed and specific and why DHS was obligated to conduct a search for responsive records. Plaintiff also provided additional guidance to DHS regarding component offices that might possess responsive records, and about specific records for which the agency should search.

28. Plaintiff has received no further communication and no responsive records from DHS. DHS has not addressed Plaintiff's request for expedited processing or a fee waiver. A true and accurate copy of Plaintiff's relevant correspondence with DHS is attached hereto as Exhibit C.

29. DHS possesses records responsive to the Request. Federal contracting records and press reports reveal that DHS components have purchased access to cell phone location databases, and press reports state that DHS has produced a memorandum addressing the legal basis for the agency's purchase and use of this data.

30. Plaintiff has exhausted administrative remedies with DHS.

## ICE

31. On March 6, 2020, ICE acknowledged receipt of the Request, but did not address Plaintiff's requests for expedited processing or fee waiver.

32. Plaintiff has received no further communication and no responsive records from ICE since March 6, 2020. A true and accurate copy of Plaintiff's relevant correspondence with ICE is attached hereto as Exhibit D.

33. ICE possesses records responsive to the Request. Federal contracting records and press reports reveal that ICE has purchased access to cell phone location databases.

34. Plaintiff has exhausted administrative remedies because ICE has failed to comply with the time limit for responding to FOIA requests.

## CAUSES OF ACTION

35. Defendants have failed to produce records responsive to the Request.

36. Defendants' failure to promptly make available the records sought by the Request violates FOIA, 5 U.S.C. § 552(a)(3)(A), and Defendants' corresponding regulations.

37. Defendants' failure to conduct an adequate search for records responsive to the Request violates FOIA, 5 U.S.C. § 552(a)(3)(C), (D), and Defendants' corresponding regulations.

38. Plaintiff is entitled to a waiver of all search, review, processing, and duplication fees in connection with the Request, and ICE's and DHS's failure to grant Plaintiff's request for waiver and limitation of fees violates FOIA, 5 U.S.C. § 552(a)(4)(A), and Defendants' corresponding regulations.

39. Plaintiff has exhausted administrative remedies to the extent required by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks this Court to GRANT the following relief:

1. Order that Defendants shall conduct adequate searches for records responsive to the Request;

2. Order that Defendants shall produce all requested records forthwith, or alternatively on an expedited schedule established by the Court;

3. Enjoin Defendants from charging Plaintiff search, review, processing, and duplication fees in connection with responding to the Request;

4. Award Plaintiff costs and reasonable attorneys' fees in the action; and

5. Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

*/s/ Nathan Freed Wessler*
NATHAN FREED WESSLER
ASHLEY GORSKI
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
nwessler@aclu.org
agorski@aclu.org

AMY BELSHER
ROBERT HODGSON
CHRISTOPHER DUNN
New York Civil Liberties Union Foundation
125 Broad St., 19th Floor
New York, NY 10004
(212) 607-3300
abelsher@nyclu.org[6]

December 2, 2020

---

[6] Counsel thank ACLU Speech, Privacy, and Technology Project law-graduate fellow Shreya Tewari for her assistance in preparing this complaint.