# Exhibit A

February 10, 2020

U.S. Department of Homeland Security
Chief Privacy Officer/Chief FOIA Officer
The Privacy Office
245 Murray Lane, SW, Stop 0655
Washington, D.C. 20528-0655

U.S. Customs and Border Protection
FOIA Officer
90 K Street, NE
FOIA Division
Washington, D.C. 20229

U.S. Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street, SW, Stop 5009
Washington, D.C. 20536-5009

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

LEGAL DEPARTMENT

National Office
125 Broad Street,
18th Floor
New York, NY 10004
Tel: (212) 549-2500
Fax: (212) 549-2564
aclu.org

**Re:   FOIA Request Concerning Purchase and Use of Cell Phone Location Data**
**(Expedited Processing Requested)**

To Whom It May Concern:

The American Civil Liberties Union and the American Civil Liberties Union Foundation (together, the "ACLU")[1] submit this Freedom of Information Act request (the "Request"). The Request seeks records pertaining to the purchase of cell phone location data by the Department of Homeland Security ("DHS"), U.S. Customs and Border Protection ("CBP"), and Immigration and Customs Enforcement ("ICE").

### I. Background

On February 7, 2020, the *Wall Street Journal* reported that DHS has "bought access to a commercial database that maps the movements of millions of cellphones in America and is using it for immigration and border

---

[1] The American Civil Liberties Union Foundation is a 26 U.S.C. § 501(c)(3) organization that provides legal representation free of charge to individuals and organizations in civil rights and civil liberties cases, and educates the public about civil rights and civil liberties issues across the country. The American Civil Liberties Union is a separate non-profit, 26 U.S.C. § 501(c)(4) membership organization that educates the public about the civil liberties implications of pending and proposed state and federal legislation, provides analysis of pending and proposed legislation, directly lobbies legislators, and mobilizes its members to lobby their legislators.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

LEGAL DEPARTMENT

National Office
125 Broad Street,
18th Floor
New York, NY 10004
Tel: (212) 549-2500
Fax: (212) 549-2564
aclu.org

enforcement," without obtaining a warrant.[2] This is the first time the media has reported on the federal government's purchase of such data for law enforcement purposes. The report describes the commercial database as "one of the largest known troves of bulk data being deployed by law enforcement in the U.S."[3]

Contracting records show that, since 2017, DHS and its components have been purchasing licenses and subscriptions for location data from Venntel Inc.[4] According to the *Wall Street Journal*, "Venntel, in turn, purchased the information from private marketing companies that sell the location data of millions of cellphones to advertisers."[5] The data sold by Venntel is apparently pseudonymised, meaning that data is linked to an alphanumeric identifier, not the name of the cell phone's owner. However, it is trivially easy to identify particular individuals using their location information, by following their pattern of movements to and from their homes, or by pairing the data with publicly available information.[6]

The *Wall Street Journal* report explains that ICE has used Venntel data to help identify immigrants who were later arrested, and that CBP uses the information to identify "cellphone activity in unusual places, such as remote stretches of desert that straddle the Mexican border."[7]

These developments raise serious concerns that DHS, CBP, and ICE are seeking to circumvent fundamental Fourth Amendment protections for cell phone location data. In 2018, the Supreme Court in *Carpenter v. United States* held that the government must get a warrant to obtain cell phone location history, given its highly sensitive and revealing nature. Despite this precedent, government lawyers have reportedly approved the purchase of cell phone location information from commercial databases, on the theory that "the Carpenter ruling doesn't apply" to such purchases.[8] But the government cannot evade the warrant requirement simply by purchasing information that it would otherwise be unable to obtain without judicial oversight.

---

[2] Byron Tau & Michelle Hackman, *Federal Agencies Use Cellphone Location Data for Immigration Enforcement*, Wall St. J. (Feb. 7, 2020), https://www.wsj.com/articles/federal-agencies-use-cellphone-location-data-for-immigration-enforcement-11581078600.

[3] *Id.*

[4] *See id.*

[5] *Id.*

[6] *See id.*; *see also* Stuart A. Thompson & Charlie Warzel, *Twelve Million Phones, One Dataset, Zero Privacy*, N.Y. Times (Dec. 19, 2019), https://www.nytimes.com/interactive/2019/12/19/opinion/location-tracking-cell-phone.html. (explaining that "it's child's play to connect real names to the dots that appear on the maps" of cell phone location data).

[7] Tau & Hackman, *supra* note 2.

[8] *Id.*

2

The ACLU submits this FOIA request to provide the public with information about the purchase and use of cell phone location information by DHS, CBP, and ICE.

## II. Requested Records

The ACLU requests the following records from DHS, CBP, and ICE. This Request seeks records created on or after January 1, 2017:

1. All contracts, memoranda of understanding, letters of commitment, licenses, subscription agreements, and other agreements with vendors, including but not limited to Venntel Inc., concerning government access to or receipt of data from commercial databases containing cell phone location information.

2. All communications with Venntel Inc. and all communications discussing or mentioning Venntel Inc.

3. All policies, procedures, guidelines, formal or informal guidance, advisories, directives, training materials, presentations, and memoranda concerning:

   a. Access to commercial databases containing cell phone location information;

   b. Acquisition, processing, retention, use, or dissemination of cell phone location information purchased from a commercial vendor;

   c. The anonymization and de-anonymization of cell phone location information purchased from a commercial vendor;

   d. The use of cell phone location information purchased from a commercial vendor in civil immigration enforcement actions;

   e. The use of evidence in any court application, trial, hearing, or other proceeding that consists of, was obtained from, or was derived from cell phone location information purchased from a commercial vendor;

   f. The use of "lead" or "tip" information that consists of, was obtained from, or was derived from cell phone location information purchased from a commercial vendor; and



AMERICAN CIVIL LIBERTIES UNION FOUNDATION

LEGAL DEPARTMENT

National Office
125 Broad Street,
18th Floor
New York, NY 10004
Tel: (212) 549-2500
Fax: (212) 549-2564
aclu.org

3

    g. The circumstances under which the government notifies defendants or respondents of the use of evidence that consists of, was obtained from, or was derived from cell phone location information purchased from a commercial vendor, including notice of the information's provenance.

4. All formal legal analysis concerning access to commercial databases containing cell phone location information, or the acquisition, processing, retention, use, or dissemination of cell phone location information purchased from a commercial vendor, including the application of *Carpenter v. United States*, 138 S. Ct. 2206 (2018), to this information.

5. Records sufficient to show the volume of cell phone location data contained in the commercial databases for which DHS, CBP, and ICE have purchased access, and records sufficient to show the volume of data that the agencies have accessed from these databases.

6. Records sufficient to show the number of times each year that DHS, CBP, and ICE employees or contractors have accessed commercial databases containing cell phone location information, or have used location data obtained from such databases.

7. All records concerning the use of evidence in any court application, trial, hearing, or other proceeding that consists of, was obtained from, or was derived from cell phone location information purchased from a commercial vendor, including records concerning whether defendants or respondents received notice of the government's reliance on such information and its provenance.



AMERICAN CIVIL LIBERTIES UNION FOUNDATION

LEGAL DEPARTMENT

National Office
125 Broad Street,
18th Floor
New York, NY 10004
Tel: (212) 549-2500
Fax: (212) 549-2564
aclu.org

With respect to the form of production, *see* 5 U.S.C. § 552(a)(3)(B), the ACLU requests that responsive records be provided electronically in their native file format, if possible. Alternatively, the ACLU requests that the records be provided electronically in a text-searchable, static-image format (PDF), in the best image quality in the agency's possession, and that the records be provided in separate, Bates-stamped files.

### III. Application for Expedited Processing

The ACLU requests expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E).[9] There is a "compelling need" for these records, as defined in the statute, because the information requested is "urgen[tly]" needed by

---

[9] *See also* 6 C.F.R. § 5.5(e).

4



AMERICAN CIVIL LIBERTIES UNION FOUNDATION

LEGAL DEPARTMENT

National Office
125 Broad Street,
18th Floor
New York, NY 10004
Tel: (212) 549-2500
Fax: (212) 549-2564
aclu.org

organizations primarily engaged in disseminating information "to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

A. *The ACLU is an organization primarily engaged in disseminating information in order to inform the public about actual or alleged government activity.*

The ACLU is "primarily engaged in disseminating information" within the meaning of the statute. *See id.*[10] Obtaining information about government activity, analyzing that information, and widely publishing and disseminating it to the press and public are critical and substantial components of the ACLU's work and are among its primary activities. *See ACLU v. Dep't of Justice*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004) (finding non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" to be "primarily engaged in disseminating information").[11]

The ACLU regularly publishes *STAND*, a print magazine that reports on and analyzes civil liberties-related current events. The magazine is disseminated to 850,000 people. The ACLU also publishes regular updates and alerts via email to 3.9 million subscribers (both ACLU members and non-members). These updates are additionally broadcast to 4.8 million social media followers. The magazine as well as the email and social-media alerts often include descriptions and analysis of information obtained through FOIA requests.

The ACLU also regularly issues press releases to call attention to documents obtained through FOIA requests, as well as other breaking news,[12]

---

[10] *See also* 6 C.F.R. § 5.5(e)(1)(ii).

[11] Courts have found that the ACLU as well as other organizations with similar missions that engage in information-dissemination activities similar to the ACLU are "primarily engaged in disseminating information." *See, e.g.*, *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005); *ACLU*, 321 F. Supp. 2d at 29 n.5; *Elec. Privacy Info. Ctr. v. DOD,* 241 F. Supp. 2d 5, 11 (D.D.C. 2003).

[12] Press Release, ACLU, Federal Court Rules Gov't Cannot Unilaterally Detain U.S. Resident Indefinitely (Dec. 13, 2019), https://www.aclu.org/press-releases/federal-court-rules-government-cannot-unilaterally-detain-us-resident-indefinitely; Press Release, ACLU, Federal Court Permanently Blocks Billions of Dollars in Border Wall Construction (June 28, 2019), https://www.aclu.org/press-releases/federal-court-permanently-blocks-billions-dollars-border-wall-construction; Press Release, ACLU, New Documents Reveal NSA Improperly Collected Americans' Call Records Yet Again (June 26, 2019), https://www.aclu.org/press-releases/new-documents-reveal-nsa-improperly-collected-americans-call-records-yet-again; Press Release, ACLU, ACLU and Center for Media Justice Sue FBI for Records on Surveillance of Black Activists (Mar. 21, 2019), https://www.aclu.org/press-releases/aclu-and-center-media-justice-sue-fbi-records-surveillance-black-activists; Press Release, ACLU,

and ACLU attorneys are interviewed frequently for news stories about documents released through ACLU FOIA requests.[13]

Similarly, the ACLU publishes reports about government conduct and civil liberties issues based on its analysis of information derived from various sources, including information obtained from the government through FOIA requests. This material is broadly circulated to the public and widely available to everyone for no cost or, sometimes, for a small fee. ACLU national projects regularly publish and disseminate reports that include a description and analysis of government documents obtained through FOIA requests.[14] The ACLU also regularly publishes books, "know your rights" materials, fact sheets, and educational brochures and pamphlets designed to educate the



AMERICAN CIVIL LIBERTIES UNION FOUNDATION

LEGAL DEPARTMENT

National Office
125 Broad Street,
18th Floor
New York, NY 10004
Tel: (212) 549-2500
Fax: (212) 549-2564
aclu.org

---

New Documents Reveal Government Plans to Spy on Keystone XL Protesters (Sept. 4, 2018), https://www.aclu.org/news/new-documents-reveal-government-plans-spy-keystone-xl-protesters; Press Release, ACLU, ACLU Obtains Documents Showing Widespread Abuse of Child Immigrants in U.S. Custody (May 22, 2018), https://www.aclu.org/news/aclu-obtains-documents-showing-widespread-abuse-child-immigrants-us-custody; Press Release, ACLU, ACLU Files Lawsuits Demanding Local Documents on Implementation of Muslim Ban (Apr. 12, 2017), https://www.aclu.org/news/aclu-files-lawsuits-demanding-local-documents-implementation-trump-muslim-ban. Press Release, ACLU, U.S. Releases Drone Strike 'Playbook' in Response to ACLU Lawsuit (Aug. 6, 2016), https://www.aclu.org/news/us-releases-drone-strike-playbook-response-aclu-lawsuit.

[13] *See, e.g.*, Charlie Savage, *N.S.A. Gathered Domestic Calling Records It Had No Authority to Collect*, N.Y. Times (June 26, 2019), https://www.nytimes.com/2019/06/26/us/telecom-nsa-domestic-calling-records.html (quoting ACLU attorney Patrick Toomey); Rachel Frazin, *ACLU Sues FBI Over Black Activist Surveillance Records*, Hill (Mar. 21, 2019), https://thehill.com/policy/national-security/fbi/435143-fbi-sued-over-black-activist-surveillance-records (quoting ACLU attorney Nusrat Choudhury); Cora Currier, *TSA's Own Files Show Doubtful Science Behind Its Behavioral Screen Program*, Intercept (Feb. 8, 2017), https://theintercept.com/2017/02/08/tsas-own-files-show-doubtful-science-behind-its-behavior-screening-program (quoting ACLU attorney Hugh Handeyside); Larry Neumeister, *Judge Scolds Government over Iraq Detainee Abuse Pictures*, Associated Press (Jan. 18, 2017), https://www.apnews.com/865c32eebf4d457499c017eb837b34dc (quoting ACLU project director Hina Shamsi).

[14] *See, e.g.*, ACLU, Bad Trip: Debunking the TSA's 'Behavior Detection' Program (2017), https://www.aclu.org/sites/default/files/field_document/dem17-tsa_detection_report-v02.pdf; Carl Takei, ACLU-Obtained Emails Prove that the Federal Bureau of Prisons Covered Up Its Visit to the CIA's Torture Site (Nov. 22, 2016), https://www.aclu.org/blog/speak-freely/aclu-obtained-emails-prove-federal-bureau-prisons-covered-its-visit-cias-torture; Brett Max Kaufman, Details Abound in Drone 'Playbook' – Except for the Ones That Really Matter Most (Aug. 8, 2016), https://www.aclu.org/ blog/speak-freely/details-abound-drone-playbook-except-ones-really-matter-most; ACLU, Leaving Girls Behind: An Analysis of Washington D.C.'s "Empowering Males of Color" Initiative (2016), https://www.aclu.org/report/leaving-girls-behind; Nathan Freed Wessler, ACLU-Obtained Documents Reveal Breadth of Secretive Stingray Use in Florida (Feb. 22, 2015), https://www.aclu.org/blog/free-future/aclu-obtained-documents-reveal-breadth-secretive-stingray-use-florida; Nathan Freed Wessler, FBI Documents Reveal New Information on Baltimore Surveillance Flights (Oct. 30, 2015), https://www.aclu.org/blog/free-future/fbi-documents-reveal-new-information-baltimore-surveillance-flights.

public about civil liberties issues and government policies that implicate civil rights and liberties.

The ACLU publishes a widely read blog where original editorial content reporting on and analyzing civil rights and civil liberties news is posted daily. *See* https://www.aclu.org/blog. The ACLU creates and disseminates original editorial and educational content on civil rights and civil liberties news through multi-media projects, including videos, podcasts, and interactive features. *See* https://www.aclu.org/multimedia. The ACLU also publishes, analyzes, and disseminates information through its frequently visited website, https://www.aclu.org. The website addresses civil rights and civil liberties issues in depth, provides features on civil rights and civil liberties issues in the news, and contains many thousands of documents relating to the issues on which the ACLU is focused. The ACLU's website also serves as a clearinghouse for news about ACLU cases, including analysis about case developments and an archive of case-related documents. Through these pages, and with respect to each specific civil liberties issue, the ACLU provides the public with educational material, recent news, analyses of relevant congressional or executive branch action, government documents obtained through FOIA requests, and further in-depth analytic and educational multi-media features.[15]

The ACLU website includes many features on information obtained through the FOIA. For example, the ACLU maintains an online "Torture Database," a compilation of over 100,000 pages of FOIA documents that allows researchers and the public to conduct sophisticated searches of its contents relating to government policies on rendition, detention, and



AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

LEGAL DEPARTMENT

National Office
125 Broad Street,
18th Floor
New York, NY 10004
Tel: (212) 549-2500
Fax: (212) 549-2564
aclu.org

---

[15] *See, e.g.*, *ACLU v. ODNI*—FOIA Lawsuit Seeking Records About Government Surveillance Under the USA Freedom Act, ACLU Case Page, https://www.aclu.org/cases/aclu-v-odni-foia-lawsuit-seeking-records-about-government-surveillance-under-usa-freedom-act; *ACLU v. DOJ*—FOIA Lawsuit Seeking Information on Federal Agencies' Surveillance of Social Media, ACLU Case Page, https://www.aclu.org/cases/aclu-v-doj-foia-lawsuit-seeking-information-federal-agencies-surveillance-social-media; *ACLU v. DOJ*—FOIA Case for Records Relating to Targeted Killing Law, Policy, and Casualties, ACLU Case Page, https://www.aclu.org/cases/aclu-v-doj-foia-case-records-relating-targeted-killing-law-policy-and-casualties; Executive Order 12,333—FOIA Lawsuit, ACLU Case Page, https://www.aclu.org/cases/executive-order-12333-foia-lawsuit; ACLU Motions Requesting Public Access to FISA Court Rulings on Government Surveillance, ACLU Case Page, https://www.aclu.org/cases/aclu-motions-requesting-public-access-fisa-court-rulings-government-surveillance; FOIA Request for Justice Department Policy Memos on GPS Location Tracking, ACLU Case Page, https://www.aclu.org/cases/foia-request-justice-department-policy-memos-gps-location-tracking; Florida Stingray FOIA, ACLU Case Page, https://www.aclu.org/cases/florida-stingrayfoia; Nathan Freed Wessler, *ACLU-Obtained Documents Reveal Breadth of Secretive Stingray Use in Florida,* (Feb. 22, 2015) https://www.aclu.org/blog/free-future/aclu-obtained-documents-reveal-breadth-secretive-stingray-use-florida?redirect=blog/national-security-technology-and-liberty/aclu-obtained-documents-reveal-breadth-secretive-sting.

interrogation.[16] The ACLU has also published a number of charts and explanatory materials that collect, summarize, and analyze information it has obtained through the FOIA.[17]

The records requested are not sought for commercial use and the ACLU plans to analyze, publish, and disseminate the information disclosed as a result of this Request to the public at no cost.

B.   *The records sought are urgently needed to inform the public about actual or alleged government activity.*

These records are urgently needed to inform the public about actual or alleged government activity. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II).[18] Specifically, the requested records relate to the purchase and use of cell phone location information by DHS, CBP, and ICE. Law enforcement's use of cell phone location information is already the subject of widespread public controversy and media attention,[19] and the *Wall Street Journal*'s new revelations about the



AMERICAN CIVIL LIBERTIES UNION FOUNDATION

LEGAL DEPARTMENT

National Office
125 Broad Street,
18th Floor
New York, NY 10004
Tel: (212) 549-2500
Fax: (212) 549-2564
aclu.org

---

[16] *The Torture Database*, ACLU Database, https://www.thetorturedatabase.org; *see also Countering Violent Extremism FOIA Database*, ACLU Database, https://www.aclu.org/foia-collection/cve-foia-documents; *TSA Behavior Detection FOIA Database*, ACLU Database, https://www.aclu.org/foia-collection/tsa-behavior-detection-foia-database; *Targeted Killing FOIA Database*, ACLU Database, https://www.aclu.org/foia-collection/targeted-killing-foia-database.

[17] Summary of FISA Amendments Act FOIA Documents Released on November 29, 2010, ACLU (Nov. 29, 2010), https://www.aclu.org/files/pdfs/natsec/faafoia 20101129/20101129Summary.pdf; Index of Bush-Era OLC Memoranda Relating to Interrogation, Detention, Rendition and/or Surveillance, ACLU (Mar. 5, 2009), https://www.aclu.org/sites/default/files/pdfs/safefree/olcmemos_2009_0305.pdf; Statistics on NSL's Produced by Department of Defense, ACLU, https://www.aclu.org/sites/default/files/field_document/nsl_stats.pdf.

[18] *See also* 6 C.F.R. § 5.5(e)(1)(ii).

[19] *See, e.g.*, Jose Pagliery, *ICE in New York Has a Spy Tool to Hunt Undocumented Immigrants Via Their Cell Phones*, Univision (Oct. 17, 2019), https://www.univision.com /local/nueva-york-wxtv/ice-in-new-york-has-a-spy-tool-to-hunt-undocumented-immigrants-via-their-cell-phones; Shirin Ghaffary, *The "Smarter" Wall: How Drones, Sensors, and AI Are Patrolling the Border*, Vox (May 16, 2019), https://www.vox.com/recode/2019/5/16/ 18511583/smart-border-wall-drones-sensors-ai (updated Feb. 7, 2020); Ali Winston, *Did the Police Spy on Black Lives Matter Protesters? The Answer May Soon Come Out*, N.Y. Times (Jan. 14, 2019), https://www.nytimes.com/2019/01/14/nyregion/nypd-black-lives-matter-surveillance.html; Chantal Da Silva, *ICE Just Launched A $2.4M Contract with a Secretive Data Surveillance Company That Tracks You In Real Time*, Newsweek (June 7, 2018), https://www.newsweek.com/ice-just-signed-24m-contract-secretive-data-surveillance-company-can-track-you-962493; Morgan Chalfant & Ali Breland, *'Stingray' Spying Prompts Fears About Surveillance*, Hill (June 6, 2018), https://thehill.com/policy/national-security/390893-stingray-spying-prompts-fears-about-surveillance; Robert Snell, *Feds Use Anti-Terror Tool to Hunt Undocumented Immigrants Amid Trump's Crackdown*, Detroit News (May 18, 2017), https://www.detroitnews.com/story/news/local/detroitcity/2017/05/ 18/cell-snooping-fbi-immigrant/101859616; Adolfo Flores, *DHS Has Used A Controversial Cell Phone-Tracking Device More Than 1,800 Times*, BuzzFeed News (Nov. 17, 2017),

8

purchase of this information from commercial vendors has resulted in further media scrutiny and calls for congressional hearings.[20] Representative Carolyn Maloney, who leads the House Committee on Oversight and Reform, has stated that the committee plans to "fully investigate this issue to ensure that Americans' privacy is protected."[21] However, without access to information about DHS, CBP, and ICE policies and practices, lawmakers and the public cannot participate fully in the debate about whether and how acquisition and use of this information should be permitted. That debate is happening *now*, and there is a pressing need for the records sought in this Request.

Also of deep public concern are questions surrounding ICE and CBP operations targeting undocumented immigrants, including whether there are appropriate limits on agents' discretion, whether particularly vulnerable populations are protected from unjustified targeting, and whether agents are using acceptable means to locate and detain people.[22] Amid reports of increased arrests of undocumented immigrants by ICE and CBP under the current administration, there is a pressing need for accurate information about the means used by ICE and CBP to identify and locate immigrants whom the agencies seek to detain and potentially deport. The records sought relate to a matter of widespread and exceptional media interest: the government's use of cell phone location information and the targeting of undocumented immigrants.



AMERICAN CIVIL LIBERTIES UNION FOUNDATION

LEGAL DEPARTMENT

National Office
125 Broad Street,
18th Floor
New York, NY 10004
Tel: (212) 549-2500
Fax: (212) 549-2564
aclu.org

---

https://www.buzzfeednews.com/article/adolfoflores/this-is-how-many-times-the-department-of-homeland-security.

[20] *See* Tau & Hackman, *supra* note 2; Editorial, *Apps Are Selling Your Location Data. The U.S. Government is Buying.*, Wash. Post (Feb. 9, 2020), https://www.washingtonpost.com/opinions/apps-are-selling-your-location-data-the-us-government-is-buying/2020/02/09/9d09475e-49e2-11ea-b4d9-29cc419287eb_story.html; Editorial, *The Government Uses 'Near Perfect Surveillance' Data on Americans*, N.Y. Times (Feb. 7, 2020), https://www.nytimes.com/2020/02/07/opinion/dhs-cell-phone-tracking.html.

[21] *See* Editorial, *The Government Uses 'Near Perfect Surveillance' Data on Americans*, *supra* note 20.

[22] *See, e.g.*, Daniel I. Morales, *et al.*, *DNA Collection at the Border Threatens the Privacy of All Americans*, N.Y. Times (Jan. 23, 2020), https://www.nytimes.com/2020/01/23/opinion/dna-collection-border-privacy.html; Hamed Aleaziz, *ICE Is Now Fingerprinting Immigrants As Young As 14 Years Old*, BuzzFeed News (Feb. 5, 2020), https://www.buzzfeednews.com/article/hamedaleaziz/ice-immigration-customs-fingerprinting-refugees-teens; Max Rivlin-Nadler, *How ICE Uses Social Media To Surveil and Arrest Immigrants*, Intercept (Dec. 22, 2019), https://theintercept.com/2019/12/22/ice-social-media-surveillance; McKenzie Funk, *How ICE Picks Its Targets in the Surveillance Age*, N.Y. Times (Oct. 2, 2019), https://www.nytimes.com/2019/10/02/magazine/ice-surveillance-deportation.html; Sidney Fussell, *ICE and the Ever-Widening Surveillance Dragnet*, Atlantic (July 10, 2019), https://www.theatlantic.com/technology/archive/2019/07/three-states-granted-ice-access-dmv-photos/593509; Sam Levin, *US Uses Vast License Plate Database to Track Undocumented Immigrants*, Guardian (Mar. 13, 2019), https://www.theguardian.com/us-news/2019/mar/13/us-immigration-ice-undocumented-immigrants-license-plates.

Given the foregoing, ACLU has satisfied the requirements for expedited processing of this Request.

## IV. Application for Waiver or Limitation of Fees

The ACLU requests a waiver of document search, review, and duplication fees on the grounds that disclosure of the requested records is in the public interest and because disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).[23] The ACLU also requests a waiver of search fees on the grounds that each organization qualifies as a "representative of the news media" and neither organization seeks the records for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II).

A. *The Request is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the ACLU.*

As discussed above, media accounts underscore the substantial public interest in the records sought through this Request. *See supra* Section III.B. Given the ongoing and widespread media attention to immigration enforcement, as well as law enforcement's use of cell phone location information, the records sought will significantly contribute to public understanding of matters of profound importance. Moreover, because so little information is publicly available concerning the government's purchase and use of location data from commercial vendors, the records sought are critical to understanding the scope of this practice, the government's purported legal justifications for it, and its broader implications for Fourth Amendment rights.

The ACLU is not filing this Request to further its respective commercial interest. As described above, any information disclosed by the ACLU as a result of this FOIA Request will be made available to the public at no cost. Thus, a fee waiver would fulfill Congress's legislative intent in amending FOIA. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be liberally construed in favor of waivers for noncommercial requesters." (quotation marks omitted)).

B. *The ACLU is a representative of the news media and the records are not sought for commercial use.*

The ACLU also requests a waiver of search fees on the basis that the ACLU qualifies as a "representative of the news media" and does not seek the



AMERICAN CIVIL LIBERTIES UNION FOUNDATION

LEGAL DEPARTMENT

National Office
125 Broad Street,
18th Floor
New York, NY 10004
Tel: (212) 549-2500
Fax: (212) 549-2564
aclu.org

---

[23] *See also* 6 C.F.R. § 5.11(k)(1).



AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

LEGAL DEPARTMENT

National Office
125 Broad Street,
18th Floor
New York, NY 10004
Tel: (212) 549-2500
Fax: (212) 549-2564
aclu.org

records for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II).[24] The ACLU meets the statutory and regulatory definitions of a "representative of the news media" because it is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii)(III)[25]; *see also Nat'l Sec. Archive v. Dep't of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989) (finding that an organization that gathers information, exercises editorial discretion in selecting and organizing documents, "devises indices and finding aids," and "distributes the resulting work to the public" is a "representative of the news media" for purposes of the FOIA); *Serv. Women's Action Network v. Dep't of Defense*, 888 F. Supp. 2d 282 (D. Conn. 2012) (requesters, including ACLU, were representatives of the news media and thus qualified for fee waivers for FOIA requests to the Department of Defense and Department of Veterans Affairs); *ACLU of Wash. v. Dep't of Justice*, No. C09–0642RSL, 2011 WL 887731, at *10 (W.D. Wash. Mar. 10, 2011) (finding that the ACLU of Washington is an entity that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience"); *ACLU*, 321 F. Supp. 2d at 30 n.5 (finding non-profit public interest group to be "primarily engaged in disseminating information"). The ACLU therefore is a "representative of the news media" for the same reasons that it is "primarily engaged in the dissemination of information."

Furthermore, courts have found other organizations whose mission, function, publishing, and public education activities are similar in kind to the ACLU's to be "representatives of the news media" as well. *See, e.g.*, *Cause of Action v. IRS*, 125 F. Supp. 3d 145 (D.C. Cir. 2015); *Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d at 10–15 (finding non-profit public interest group that disseminated an electronic newsletter and published books was a "representative of the news media" for purposes of the FOIA); *Nat'l Sec. Archive*, 880 F.2d at 1387; *Judicial Watch, Inc. v. Dep't of Justice*, 133 F. Supp. 2d 52, 53–54 (D.D.C. 2000) (finding Judicial Watch, self-described as a "public interest law firm," to be a news media requester).[26] On account of these factors, feeds associated with responding to FOIA requests are regularly waived for the ACLU as a "representative of the news media."[27] As was true in those instances, the ACLU meets the requirements for a fee waiver here.

---

[24] *See also* 6 C.F.R. § 5.11(k)(2)(iii).

[25] *See also* 6 C.F.R. § 5.11(b)(6).

[26] Courts have found these organizations to be "representatives of the news media" even though they engage in litigation and lobbying activities beyond their dissemination of information and public education activities. *See, e.g.*, *Elec. Privacy Info Ctr.*, 241 F. Supp. 2d 5; *Nat'l Sec. Archive*, 880 F.2d at 1387; see also *Leadership Conference on Human Rights*, 404 F. Supp. 2d at 260; *Judicial Watch, Inc.*, 133 F. Supp. 2d at 53–54.

[27] In August 2017, CBP granted a fee-waiver request regarding a FOIA request for records relating to a muster sent by CBP in April 2017. In May 2017, CBP granted a fee-

* * *

Pursuant to applicable statutes and regulations, the ACLU expects a determination regarding expedited processing within 10 days. *See* 5 U.S.C. § 552(a)(6)(E)(ii); 6 C.F.R. § 5.5(e)(4).

If the Request is denied in whole or in part, the ACLU asks that you justify all denials by reference to specific exemptions to FOIA. The ACLU expects the release of all segregable portions of otherwise exempt material. The ACLU reserves the right to appeal a decision to withhold any information or deny a waiver of fees.

Thank you for your prompt attention to this matter. Please furnish the applicable records to:

Nathan Freed Wessler
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, New York 10004
T: 212-549-2500
F: 212-549-2654
nwessler@aclu.org

We affirm that the information provided supporting the request for expedited processing is true and correct to the best of our knowledge and belief. *See* 5 U.S.C. § 552(a)(6)(E)(vi).

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

LEGAL DEPARTMENT

National Office
125 Broad Street,
18th Floor
New York, NY 10004
Tel: (212) 549-2500
Fax: (212) 549-2564
aclu.org

---

waiver request regarding a FOIA request for documents related to electronic device searches at the border. In April 2017, In April 2017, the CIA and the Department of State granted fee waiver requests in relation to a FOIA request for records related to the legal authority for the use of military force in Syria. In March 2017, the Department of Defense Office of Inspector General, the CIA, and the Department of State granted fee waiver requests regarding a FOIA request for documents related to the January 29, 2017 raid in al Ghayil, Yemen. In May 2016, the FBI granted a fee waiver request regarding a FOIA request issued to the DOJ for documents related to Countering Violent Extremism Programs. In April 2013, the National Security Division of the DOJ granted a fee waiver request with respect to a request for documents relating to the FISA Amendments Act. Also in April 2013, the DOJ granted a fee-waiver request regarding a FOIA request for documents related to "national security letters" issued under the Electronic Communications Privacy Act. In August 2013, the FBI granted the fee-waiver request related to the same FOIA request issued to the DOJ. In June 2011, the DOJ National Security Division granted a fee waiver to the ACLU with respect to a request for documents relating to the interpretation and implementation of a section of the PATRIOT Act. In March 2009, the State Department granted a fee waiver to the ACLU with regard to a FOIA request for documents relating to the detention, interrogation, treatment, or prosecution of suspected terrorists.

Sincerely,

Ashley Gorski
Nathan Freed Wessler
American Civil Liberties Union
  Foundation
125 Broad Street, 18th Floor
New York, New York 10004
T: 212-549-2500
F: 212-549-2654
agorski@aclu.org



AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

LEGAL DEPARTMENT

National Office
125 Broad Street,
18th Floor
New York, NY 10004
Tel: (212) 549-2500
Fax: (212) 549-2564
aclu.org