April 23, 2021

*VIA ECF*

The Honorable Paul G. Gardephe
United States District Judge
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

> Re: *American Civil Liberties Union v. U.S. Department of Homeland Security et al.*,
> No. 1:20-cv-10083-PGG

Dear Judge Gardephe,

Pursuant to this Court's Order of April 9, 2021, ECF No. 30, in the above-referenced Freedom of Information Act ("FOIA") case seeking records related to the defendant agencies' purchase of cell-phone location data for immigration enforcement and other purposes, Plaintiff American Civil Liberties Union writes in response to Defendants' letters of April 16 and April 22, 2021, ECF Nos. 31 & 32, regarding disputes over search for and processing of records by defendants U.S. Department of Homeland Security ("DHS") and U.S. Immigration and Customs Enforcement ("ICE"). Plaintiff respectfully asks the Court to order DHS to refer the request to its component agencies that are likely to possess responsive records, and order ICE to process at least 1,000 pages of potentially responsive records per month.

## DHS

As to the DHS Office of Procurement Operations, Plaintiff agrees that the end of May is a reasonable timeline for completed production of the 22 pages identified as potentially responsive to the request. Plaintiff also agrees that May 20 is a reasonable deadline by which the Office of Civil Rights and Civil Liberties, the Science and Technology Directorate, the Privacy Office, and the Office of the General Counsel will have completed their searches for responsive records and notified Plaintiff of the total volume of potentially responsive records. Plaintiff proposes that the parties submit a joint letter to the Court addressing a schedule for processing those records by May 27, 2021.

It remains Plaintiff's position that FOIA and DHS's implementing regulations oblige DHS to refer the request to the U.S. Secret Service ("USSS"), U.S. Coast Guard ("USCG"), and any other component likely to possess responsive records. *See* 4/1/2021 Joint Letter at 3, ECF No. 26. Moreover, at this stage of the case, allowing DHS to refuse to refer the request to these components would prejudice Plaintiff. As previously described to the Court, *see* ECF No. 26, at 3, Plaintiff corresponded with DHS in March 2020, explaining that USSS and USCG were likely to have responsive records, and asking DHS-HQ to forward the request to those components for processing. DHS did not respond to that letter, and did not make its position on this issue clear until more than a year later. Had DHS informed Plaintiff of its position a year ago, Plaintiff could easily have sent the request directly to USSS and USCG, and would have been able to

1

name them as defendants in the Complaint if needed. But now—more than fourteen months
since submission of the FOIA request, more than a year since DHS's lack of response to
Plaintiff's March 2020 letter, and more than five months since filing of the complaint—requiring
Plaintiff to submit the FOIA request anew would cause pointless delay. It would trigger FOIA's
administrative exhaustion requirement, introduce processing delays, and require Plaintiff to
amend the Complaint, effect service on USSS and USCG, and wait for Defendants to file an
amended answer before seeking the Court's aid in ordering a response to the request. There is no
good reason to impose additional delays in this case. Plaintiff respectfully asks the Court to order
DHS to refer the request to its appropriate components.

## ICE

Plaintiff maintains that ICE's proposed processing schedule of 500 pages per month is
unreasonable in this case for two reasons. *See* 4/1/2021 Joint Letter at 2–3, ECF No. 26.

First, courts have ordered greater monthly processing rates when there was significant
public interest in the records sought. *See, e.g., Clemente v. Fed. Bureau of Investigation,* 71 F.
Supp. 3d 262, 268–69 (D.D.C. 2014) (ordering processing of 5,000 pages per month for request
involving "very serious allegations of corruption"); *Open Soc'y Just. Initiative v. Cent. Intel.
Agency,* 399 F. Supp. 3d 161 (S.D.N.Y. 2019) (ordering processing of 5,000 pages per month for
records regarding journalist Jamal Khashoggi's disappearance); Transcript of Proceedings at 7,
*Boundaoui v. Fed. Bureau of Investigation,* No. 1:2017-cv-04782 (N.D. Ill. Sept. 26, 2017), ECF
No. 43 (ordering FBI to process 3,500 pages per month in case concerning FOIA request for
records about the profiling and surveillance of the Arab American community); *Nat. Res. Def.
Council v. Dep't of Energy,* 191 F. Supp. 2d 41, 43–44 (D.D.C. 2002) (ordering processing of
7,584 pages in two months because the energy policy at issue in the request "is of enormous
concern to consumers, to environmentalists, to the Congress, and to industry").

There is substantial public interest in the subject of the instant FOIA request. Numerous
press reports have addressed the significant constitutional and policy questions raised by
Defendants'[1] and other federal agencies'[2] purchase and use of cell phone location information

---

[1] *See, e.g.*, Hamed Aleaziz & Caroline Haskins, *DHS Authorities Are Buying Moment by Moment
Geolocation Cellphone Data to Track People*, BuzzFeed News (Oct. 30, 2020),
https://www.buzzfeednews.com/article/hamedaleaziz/ice; Charles Levinson, *Through Apps, Not
Warrants, 'Locate X' Allows Federal Law Enforcement to Track Phones*, Protocol (Mar. 5,
2020), https://www.protocol.com/government; Byron Tau & Michelle Hackman, *Federal
Agencies Use Cellphone Location Data for Immigration Enforcement*, Wall St. J. (Feb. 7, 2020),
https://www.wsj.com/articles/federal-agencies-use-cellphone-location-data-for-immigration-
enforcement-11581078600.

[2] *See, e.g.*, Charlie Savage, *Intelligence Analysts Use U.S. Smartphone Location Data Without
Warrants, Memo Says*, New York Times (Jan. 25, 2021),
https://www.nytimes.com/2021/01/22/us/politics/dia-surveillance-data.html; Mitchell Clark, *U.S.
Defense Intelligence Agency Admits to Buying Citizens' Location Data*, The Verge (Jan. 22,
2021), https://www.theverge.com/2021/1/22/22244848/us-intelligence-memo-admits-buying-
smartphone-location-data; Sara Morrison, *A Surprising Number of Government Agencies Buy
Cellphone Data. Lawmakers Want to Know Why*, Vox (Dec. 2, 2020),

without a warrant. Many of those reports have highlighted the gaps in public knowledge resulting from inadequate transparency by federal agencies,[3] and after public outcry agency inspectors general—including in DHS—have begun to investigate.[4] And just this week, bipartisan legislation was introduced in the U.S. Senate and House to prohibit federal agencies from purchasing cell phone location information without a warrant.[5] The public's and lawmakers' ability to engage in informed debate about that legislation depends on timely access to accurate information about the government's practices. *See Nat. Res. Def. Council*, 191 F. Supp. 2d at 43 (ordering speedy processing in part because "[i]t is hardly any secret that Congress will shortly be considering these complex policy issues").

Second, the reasonableness of ICE's proposed processing rate should be evaluated in relation to the total volume of responsive records remaining. Courts have consistently required agencies to process a higher number of pages per month when the overall volume of documents meant that a lower rate, like the 500 pages per month ICE proposes here, would result in too lengthy a processing period. *See, e.g.*, *Seavey v. U.S. Dep't of Just.*, 266 F. Supp. 3d 241, 246–48

---

https://www.vox.com/recode/22038383/dhs-cbp-investigation-cellphone-data-brokers-venntel; Byron Tau, *IRS Used Cellphone Location Data to Try to Find Suspects*, Wall St. J. (June 19, 2020), https://www.wsj.com/articles/irs-used-cellphone-location-data-to-try-to-find-suspects-11592587815.

[3] *See, e.g.*, Sara Morrison, *App Trackers Secretly Sell Your Location Data to the Government. App Stores Won't Stop Them*, Vox (Feb. 23, 2021), https://www.vox.com/recode/22278402/x-mode-sdk-google-play-ban-location-data; Elaine Silvestrini, *Who Needs a Warrant? Law Enforcement Can Just Buy your Private Data*, Legal Examiner (Dec. 17, 2020), https://www.legalexaminer.com/home-family/who-needs-a-warrant-law-enforcement-can-just-buy-your-private-data/.

[4] *See, e.g.*, Byron Tau, *Homeland Security Watchdog to Probe Department's Use of Phone Location Data*, Wall. St. J. (Dec. 2, 2020), https://www.wsj.com/articles/homeland-security-watchdog-to-probe-departments-use-of-phone-location-data-11606910402; Byron Tau, *Treasury Watchdog Warns of Government's Use of Cellphone Data Without Warrants*, Wall. St. J. (Feb. 22, 2021), https://www.wsj.com/articles/treasury-watchdog-warns-of-governments-use-of-cellphone-data-without-warrants-11614003868.

[5] S. 1265, 117th Cong. (introduced Apr. 21, 2021); H.R. 2738, 117th Cong. (introduced Apr. 21, 2021); Press Release, Senator Ron Wyden, Wyden, Paul and Bipartisan Members of Congress Introduce The Fourth Amendment Is Not For Sale Act (Apr. 21, 2021), https://www.wyden.senate.gov/news/press-releases/wyden-paul-and-bipartisan-members-of-congress-introduce-the-fourth-amendment-is-not-for-sale-act-; Andrea Vittorio, *Warrantless Purchase of Location Data Blocked in New Senate Bill*, Bloomberg Law (Apr. 21, 2021), https://news.bloomberglaw.com/tech-and-telecom-law/warrantless-purchase-of-location-data-blocked-in-new-senate-bill; Drew Harwell, *Senators Seek Limits on Some Facial-Recognition Use by Police, Energizing Surveillance Technology Debate*, Wash. Post (Apr. 21, 2021), https://www.washingtonpost.com/technology/2021/04/21/data-surveillance-bill/ ("Local, state and federal law enforcement agencies have tapped private databases that gather and bundle millions of location records, . . . for government investigation.").

(D.D.C. 2017) (noting that at 500 pages per month, the agency would have taken seventeen years to complete the FOIA request and ordering a processing rate of 2,850 pages per month); *Jud. Watch, Inc. v. U.S. Dep't of Energy*, 191 F. Supp. 2d 138, 140–41 (D.D.C. 2002) (ordering processing of 9,000 pages and 6,000 pages within approximately sixty days); *Elec. Priv. Info. Ctr. v. Fed. Bureau of Investigation*, 933 F. Supp. 2d 42, 50 (D.D.C. 2013) (ordering processing of 25,000 pages in four months); Order, *Am. Civil Liberties Union v. U.S. Dep't of Homeland Sec.*, No. 1:20-cv-02213-NRB (S.D.N.Y. July 7, 2020), ECF No. 25 (ordering defendant agencies to process 250, 250, and 750 pages per month, respectively, in light of relatively small number of potentially responsive records identified to date, but stating that "[if] the final number of potentially responsive pages from [the agencies] significantly exceeds the present estimates . . . plaintiffs may request that the Court increase" the monthly processing rate); Civil Conf. Minute Order, *Ctr. for Media Just. v. Fed. Bureau of Investigation*, No. 4:19-cv-01465-DMR (N.D. Cal. Apr. 15, 2020), ECF No. 72 (ordering "Defendants to process the 12,700 pages of currently identified responsive records at a rate of 2000 pages per month," and explaining that "[t]he court will revisit this rate once it has a better understanding of the scope of the remaining investigatory documents"); Civil Minutes, *Al Otro Lado v. Dep't of Homeland Sec.*, No. 20-cv-05191-ODW (C.D. Cal. Sept. 23, 2020), ECF No. 35 (in case involving 8,425 pages of potentially responsive records, ordering processing of 1,000 pages per month); *see also* Joint Stip. to Stay Proceedings at 1, *Al Otro Lado*, No. 20-cv-05191-ODW, ECF. No. 38 (reciting volume of potentially responsive records).

In *Seavey*, the court considered an agency declaration similar to that provided by ICE here, *see* Pineiro Decl., ECF No. 31-1, and nonetheless found that a 500-page-per-month rate was unreasonable. *Seavey*, 266 F. Supp. 3d at 246. In this case, the proposed 500-page-per-month processing rate would require Plaintiff to wait a year and a half to receive full production of responsive documents from ICE, and would mean that summary judgment briefing addressing any challenges to the adequacy of the agency's search or propriety of its withholdings and redactions would stretch months beyond that. *See* 4/1/2021 Joint Letter at 2, ECF No. 26. This delay is especially unreasonable in light of the strong public interest in records relating to the subject of the request. *See supra.* Plaintiff respectfully asks the Court to order ICE to process at least 1,000 pages per month.[6]

---

[6] Plaintiff notes that ICE has not argued that exceptional circumstances exist justifying an unusual delay in processing records, nor could it. *See Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976). "'[D]elays that result from a predictable agency workload of requests' cannot form the basis for showing a volume of requests unanticipated by Congress." *Treatment Action Grp. v. U.S. Food & Drug Admin.,* No. 15-cv-976 (VAB), 2016 WL 5171987, at *10 (D. Conn. Sept. 20, 2016) (alteration in original) (quoting *Buc v. U.S. Food & Drug Admin.*, 762 F. Supp. 2d 62, 66 (D.D.C. 2011)). "[A]llowing a mere showing of a normal backlog of requests to constitute 'exceptional circumstances' would render the concept [of FOIA] and its underlying Congressional intent meaningless." *Id.* (alteration in original) (quoting *Bloomberg, L.P. v. U.S. Food & Drug Admin.*, 500 F. Supp. 2d 371, 375 (S.D.N.Y. 2007)).

Respectfully submitted,

*/s/ Nathan Freed Wessler*
Nathan Freed Wessler
Ashley Gorski
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
nwessler@aclu.org
agorski@aclu.org

Amy Belsher
Robert Hodgson
Christopher Dunn
New York Civil Liberties Union Foundation
125 Broad St., 19th Floor
New York, NY 10004
(212) 607-3300
abelsher@nyclu.org

*Counsel for Plaintiff*

## Certificate of Service

I hereby certify that on this 23rd day of April, 2021, I electronically filed the foregoing letter using the Court's CM/ECF system, which effects service upon counsel for Defendants.

/s/ Nathan Freed Wessler
Nathan Freed Wessler